UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Robert P. DesRoches**

    **v.**                                    Civil No. 05-cv-88-PB
                                            Opinion No. 2008 DNH 173

**John E. Potter, Postmaster General,
United States Post Office**

**MEMORANDUM AND ORDER**

Robert P. DesRoches brings this action against John E. Potter, Postmaster General, alleging that Potter violated the Rehabilitation Act by not promoting DesRoches to a full-time clerk position in April 1994. Potter asserts that he is entitled to summary judgment because DesRoches cannot prove at trial that he was capable of working as a full-time clerk.

**I.   FACTUAL BACKGROUND**

**A.   Employment History**

DesRoches is a former employee of the U.S. Postal Service ("USPS") and a disabled Veteran who was discharged from the Navy after suffering a wrist injury. DesRoches began working for the USPS in November 1977 as a Part-Time Flexible ("PTF")

Distribution Clerk.  In April 1989, DesRoches was relocated to the USPS's Nashua, New Hampshire location; his duties there included working with the public as a window clerk, assisting in the office, unloading trucks, and distributing parcels to the appropriate carriers.  In October 1991, DesRoches suffered work-related injuries to his back and heels.  (Pl.'s Aff. ¶ 6.)  As a result, in August 1992, plaintiff's physician, Scott Masterson, restricted DesRoches to "light duty" that comported with the following restrictions: (1) no lifting objects exceeding 20 lbs., (2) changing positions every twenty to thirty minutes, (3) gradual increase in daily hours worked from four to eight, and (4) no repetitive bending or rotating at the waist.  (Def.'s Ex. 3 to Pl.'s Dep.)

In compliance with these restrictions, DesRoches worked in a limited duty position that required him to answer telephone calls, respond to customer inquiries, work "hold" mail (Pl.'s Aff. ¶ 9) write short notes, and work with letter mail (Def. Ex. 4 to Pl.'s Dep.).  DesRoches was not required to lift more than 20 lbs. or engage in any repetitive bending or rotating at the waist.  He also was permitted to sit or stand at will.  (Def. Ex. 4 to Pl.'s Dep.)

**B.   Snow Day Sick Leave Request**

On November 3, 1993, Dr. Masterson stated in a letter that DesRoches "should not drive in inclement weather, specifically icy conditions and snow accumulation." (Def. Ex. 5 to Pl.'s Dep.)  During a medical examination and assessment for the USPS on November 16, 1993, Dr. Charlotte A. Kaplon opined that Dr. Masterson's snow day recommendation was "not based on medical problems but on convenience." (Def. Ex. 6 to Pl.'s Dep.)  On January 4, 1994, pursuant to instructions from Dr. Masterson, DesRoches requested sick leave so that he would not have to drive to work (and run the risk of injury) during a snowstorm. (Def. Ex. 7 to Pl.'s Dep.)  His request was denied, but leave without pay was approved. (Pl.'s Dep. at 39-41.) Shortly thereafter, on January 5, 1994, DesRoches requested an appointment with an Equal Employment Opportunity ("EEO") counselor and filed a preliminary complaint challenging the denial of his request for sick leave.

On April 14, 1994, DesRoches filed a formal EEO complaint. (Def. Ex. 9 to Pl.'s Dep.)  An administrative law judge ("ALJ") rejected the complaint. (Def. Ex. 10 to Pl.'s Dep.)  On April 20, 1995, the USPS issued a final agency decision, adopting the ALJ's ruling. DesRoches appealed, and the appeal was denied on November 15, 1996. (Def. Ex. 12 to Pl.'s Dep.)  A motion to

reconsider was also filed and denied, and the matter was ultimately closed. (Pl.'s Dep. at 48).

**C.   The 1994 Workers' Compensation Claim**

DesRoches stopped coming to work after January 7, 1994. On February 14, 1994, he filed a recurrence of disability notice with the U.S. Department of Labor seeking Workers' Compensation. DesRoches stated in the notice that he was no longer able to work as a PTF clerk because "[e]xtreme cold + slippery weather conditions have increased stress & pain to my lower back area ... [t]hese injuries are permanent + recurrences are to be expected." (Def. Ex. 14 to Pl.'s Dep.)  On June 6, 1994, the Labor Department's Office of Workers' Compensation Programs denied DesRoches' claim. In its report, the Office of Workers' Compensation Programs wrote that the "medical evidence from Dr. Masterson does not explain how a lumbosacral strain sustained in 1991 is the cause of [DesRoches'] disability in 1994." (Def. Ex. 15 to Pl.'s Dep.)  The memorandum of decision further concluded that "the evidence fails to demonstrate that the claimed recurrence of disability on or after January 7, 1994 is causally related to the [October 1991] injury." (Id.)  DesRoches sought reconsideration but his request was denied on August 2, 1995. (Def. Ex. 16 to Pl.'s Dep.)

### D. DesRoches' Termination

DesRoches was placed on Leave Without Pay ("LWOP") status after he failed to return to work. He asserts that this status was maintained until May 25, 1994, at which point it was converted to either sick or annual leave. (Pl.'s Mem. in Supp. of Objection to Mot. for Summ. J. at 4.) On February 14, 1995, Robert R. Gravel, Absence Control Coordinator for the USPS, informed DesRoches that USPS records showed that DesRoches had been out of work for more than a year as a result of a medical condition. (Def. Ex. 17 to Pl.'s Dep.) Mr. Gravel instructed DesRoches to contact him by March 1, 1995 with a status update, and further informed DesRoches that failure to do so would result in the commencement of involuntary separation proceedings. (Id.) When DesRoches did not respond by the requested date, Robert Gauthier, Supervisor Customer Service, sent him another letter dated March 23, 1995. (Def. Ex. 18 to Pl.'s Dep.) That letter stated as follows: "[T]his office is in need of information concerning when you will be returning to work and your physical restrictions upon return. Mr. Gravel asked that you supply information concerning your current status to this office by March 1, 1995. As no information has been received, we can only assume that you are not able to return to work and that action

should be taken to process a separation/disability with regard to your employment." (Id.)  The letter further requested DesRoches to "[p]lease supply this office with the requested medical information by April 10, 1995, so that we may properly evaluate your situation before proceeding." (Id.)  On March 29, 1995, Dr. Masterson wrote a letter detailing DesRoches's injuries. (Pl.'s Dep. at 55.)  The substance of the letter stated that Dr. Masterson was treating DesRoches for lumbar disk disease and right lumbosacral radiculopathy, and that a request for a follow-up MRI of DesRoches's lower spine was not then approved. (Id.)  Dr. Masterson unequivocally stated, "I do not feel that Mr. DesRoches should return to work at this time." (Def. Ex. 19 to Pl.'s Dep.)  In a letter dated April 19, 1995, the USPS notified DesRoches of its plan to discharge DesRoches because of his disability. (Pl.'s Dep. at 55-56.)

In his April 24, 1995 reply, DesRoches stated his unwillingness to discuss the matter while he had two complaints pending before the Equal Employment Opportunity Commission ("EEOC").[1]  (Id.)  Mr. William Bothwell, the Nashua Postmaster,

---

[1] The referenced matters are those involving the use of sick leave for a January 4, 1994, snow day and a claim seeking workers' compensation for recurring injuries beginning in February 2004.

responded by informing DesRoches that he would be terminated on June 10, 1995. DesRoches then filed an initial complaint on June 2, 1995, seeking to be "[p]laced on 100% disability and receive OWCP compensation because of on-the-job injuries in lieu of disability separation – effective January 7, 1994 and to remain permanent." (Def. Ex. 23 to Pl.'s Dep.) A formal complaint followed. In an EEO Investigative Affidavit Privacy Act Statement, signed November 15, 1995, DesRoches stated: "I have been under the care of my doctor and I have been unable to work until OWCP allows me to receive further medical treatment." (Def. Ex. 25 to Pl.'s Dep.)

On March 7, 1996, the USPS denied DesRoches claim of discrimination. (Def. Ex. 28 to Pl.'s Dep.) DesRoches appealed the USPS's decision to the Merit Systems Protection Board on May 1, 1996. The Merit Systems Protection Board denied DesRoches claim on August 14, 1996 and denied his motion for reconsideration on December 12, 1996. (Def. Exs. 30 & 31 to Pl.'s Dep.) DesRoches sought review of this decision before the EEOC, and on May 13, 1997, the EEOC upheld the Merit Systems Protection Board's finding of no discrimination. (Def. Ex. 32 to Pl.'s Dep.)

**E.    The April 2004 FTR Clerk Position**

In April 1994, while DesRoches was out of work on LWOP, an

Full-Time Regular ("FTR") position became available.

As per the collective bargaining agreement between the Postal Service Workers Union and the Postal Service, when a regular FTR position becomes available and no other FTR employee bids for the job, the most senior qualified PTF employee gets the job. (Def.'s Mot. for Summ. J. at 8.)  When the April 2004 FTR position became available, DesRoches was the most senior of the listed PTF employees.  The official announcement listed the qualification standards as follows: "Ability to stand for prolonged periods and lift moderately heavy weights (70 lbs.)." (Def. Ex. 36 to Pl.'s Dep.)

The post was ultimately awarded to another person. DesRoches filed an EEO complaint alleging that he was discriminated against on or about April 25, 1994.  (Def. Ex. 35 to Pl.'s Dep.)  On January 25, 1995, he requested a hearing before an ALJ.  DesRoches v. Potter, 2006 DNH 066, at 6.  The ALJ granted summary judgment in DesRoches' favor, and on September 1, 1995, the USPS rejected the ALJ's findings and conclusions.  Id. at 7.  DesRoches appealed to the EEOC, and on May 12, 1998, the EEOC reversed the USPS' decision.  Id.  On September 23, 2002, DesRoches filed a petition with the EEOC complaining that the USPS had not complied with the EEOC's appellate decision.  Id.

-8-

The EEOC, however, determined that the USPS had fully complied. Id.  DesRoches then challenged the EEOC's compliance decision in this court.  In a June 12, 2006 Order, I dismissed DesRoches' challenge because his complaint was not cognizable under applicable law.  Id. at 14.  DesRoches now seeks *de novo* review of his discrimination claim.

## II.  **PROCEDURAL HISTORY**

The procedural history in this case is extensive and need not be fully recounted here.  The Complaint initially sought judicial review of certain EEOC and postal agency decisions; that Complaint was dismissed.  Id. at 14.  DesRoches's Amended Complaint included three causes of action.  The first claim, seeking redress pursuant to the Accardi Doctrine, was dismissed in an order issued by Magistrate Judge Muirhead on November 28, 2006.  DesRoches v. Potter, No. 05 CV 088 (D.N.H. Nov. 28, 2006). The second claim, stating a cause of action under the Administrative Procedures Act, was also dismissed after Magistrate Judge Muirhead granted defendant's motion for reconsideration.  DesRoches v. Potter, No. 05 CV 088 (D.N.H. Jan. 29, 2007).  Count three is the only surviving claim, and it seeks *de novo* review under the Rehabilitation Act of DesRoches's claim

that he was discriminated against in April 2004 when he was not promoted to an FTR clerk position.  Potter now moves for summary judgment.

### III.  **STANDARD OF REVIEW**

Summary judgment is appropriate when "the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A party seeking summary judgment must first identify the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted."  Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323.

### IV.  **ANALYSIS**

DesRoches is not entitled to relief under the Rehabilitation Act unless he can prove at trial that he "was qualified to perform the essential functions of the job, either with or

-10-

without a reasonable accommodation." Rios-Jimenez v. Principi, 520 F.3d 31, 41 (1st Cir. 2008). Potter bases his summary judgment motion on the contention that DesRoches cannot meet this element of his Rehabilitation Act claim. In addition to holding DesRoches to his burden of proof on this issue, Potter supports his motion by pointing to the fact that DesRoches claimed in his 1994 application for workers' compensation that his back injury prevented him from working as a PTF clerk.

In Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 797 (1999), the Supreme Court considered how a claim of disability made in connection with an application for Social Security Disability Insurance ("SSID") affects a contemporaneous claim for damages under the Americans with Disabilities Act ("ADA"). The court explained that

> [the] pursuit, and receipt, of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim. Nor does the law erect a strong presumption against the recipient's success under the ADA. Nonetheless, an ADA plaintiff cannot simply ignore her SSDI contention that she was too disabled to work. To survive a defendant's motion for summary judgment, she must explain why that SSDI contention is consistent with her ADA claim that she could "perform the essential functions" of her previous job, at least with "reasonable accommodation."

Id. at 797-98. The legal standards that a court uses in evaluating a claim under the Rehabilitation Act are the same as

-11-

the standards it uses when evaluating an ADA claim. Cavero-Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 11 n.1 (1st Cir. 2004). Moreover, the Supreme Court's holding in Cleveland applies to claims of disability that are made during the course of workers' compensation proceedings. See, e.g., Sullivan v. Raytheon Co., 262 F.3d 41, 47 (1st Cir. 2001); Marinelli v. City of Erie, Pa., 216 F.3d 354, 366 n.8 (3d Cir. 2000). Thus, DesRoches cannot prevail on his Rehabilitation Act claim unless can reconcile his current contention that he was able to work as an FTR clerk with his claim in his 1994 workers' compensation application that he was disabled from working as a limited duty PTF clerk.

DesRoches claimed in his 1994 application for workers' compensation that he had aggravated a pre-existing back injury that left him unable to work at his PTF clerk position even though the Postal Service had accommodated his back injury in that position. In his later challenge to the Postal Service's attempt to terminate him for failing to return to work, DesRoches similarly asserted that he should be "[p]laced on 100% disability and receive OWCP [workers'] compensation because of on-the-job injuries in lieu of disability separation - effective January 7, 1994 and to remain permanent." Even though Potter has challenged

DesRoches' current claim that he was qualified to work as an FTR clerk, DesRoches has done nothing to reconcile his current claim with his earlier assertions that he was disabled from working as a PTF clerk.  Nor has he offered evidence of any kind in response to Potter's specific challenge beyond making the conclusory assertion that he was capable of working as a FTR clerk and producing an unsworn office note from his doctor that was generated ten years after the fact and that is contradicted by the same doctor's own contemporaneous statements.  *Compare* (Def. Ex. 19 to Pl.'s Dep.) (statement of Dr. Masterson in March 1995 that DesRoches should not return to his light duty work), *with* (Pl.'s Aff. ¶ 22) (statement of Dr. Masterson in July 2004 that he has always recommended that DesRoches is able to do light duty work).[2]  These glaring omissions are fatal DesRoches' Retaliation Act claim.  See Cleveland, 526 U.S. at 797 (plaintiff cannot simply ignore application for benefits wherein she claimed that she was too disabled to work); Rios-Jimenez, 520 F.3d at 42 n.7

---

[2] DesRoches now puts forth evidence of accommodations, such as a chair and a window sign instructing that heavy packages be taken to other windows.  DesRoches insists that if these accommodations were made for him, he would have been able to perform the April 1994 FTR position. This assertion, however, overlooks the fact that these accommodations would have made the FTR position's physical demands equal to those of the PTF position, the latter of which DesRoches has failed to show that he was capable of performing.

-13-

(doctor's unsworn and conclusive statement that plaintiff can perform job with reasonable accommodation is not sufficient to defeat summary judgment).

## V. CONCLUSION

DesRoches has failed to show that he was capable of working as an FTR clerk in 1994. Accordingly, Potter's motion for summary judgment (Doc. No. 41) is granted.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

September 17, 2008

cc: Leslie Johnson, Esq.
T. David Plourde, Esq.